EDELMIRO MARTÍNEZ RIVERA, Petitioner and Appellee, *v.* PUERTO RICO COCONUT INDUSTRIES, INC., Respondent and Appellant.

No. 9549. Argued January 20, 1948.—Decided February 24, 1948.

*Córdova & González* and *Hernán R. Franco* for appellant. *Luis Blanco Lugo* for appellee.

Mr. Chief Justice Travieso delivered the opinion of the Court.

This is an appeal taken by the defendant corporation from an order for a preliminary injunction issued by the District Court of San Juan. The facts which have given rise to this proceeding are as follows:

The plaintiff is the owner of a rural property of 29 acres (*cuerdas*), on which, at a point near its western boundary, rises a brook which runs through the property up to and beyond its eastern boundary. The waters of this brook are used for human consumption, for watering the cattle which grazes on the farm, and for other agricultural purposes. Subsequent to the acquisition of the property by the plaintiff, the defendant established, at a short distance therefrom, a factory for the processing and canning of fruits.

In the suit for injunction and damages brought by the plaintiff, the latter alleged that during the preceding three months the defendant had caused and permitted to be dumped or emptied into a ditch which leads to plaintiff's farm "all the waste water from the boilers, burnt fuel oil, and other refuse, raw materials, and decayed substances, which are carried through said ditch into the brook in plaintiff's farm and flow throughout the bed of the stream"; that as a result of the acts of the defendant the waters of the brook have become dirty, foul smelling, and polluted so as to be unfit for human consumption or for watering plaintiff's cattle; that when the cattle become so thirsty that they drink said polluted waters, they suffer physical disorders which result in their sickness or death. It is further alleged that, despite

the fact that demand has been made upon the defendant to discontinue polluting said waters, it has refused to do so and continues disturbing the plaintiff in the free enjoyment of his property.

The defendant in its answer denied the essential averments of the complaint and alleged, as a special defense, "that the waste waters from its factory flow through drainage canals to a brook lying outside of plaintiff's farm near the boundary with its factory, which is on a lower level, and it avers that the pollution of said waste waters is insufficient to cause death to plaintiff's cattle."

The only error attributed to the lower court is that it abused its discretion "because there is a total and absolute lack of evidence to support the allegations of the petition for injunction." At the hearing of the motion for a preliminary injunction, the plaintiff introduced in evidence his own testimony, that of the chemist Mr. Gil Figueroa, a letter from defendant's administrator, and a report regarding the chemical analysis of the waters. The defendant did not introduce any evidence, confining itself to a request that the preliminary injunction be denied for lack of evidence.

The lower court, after hearing the evidence presented by the plaintiff, held as proven the following facts:

"The plaintiff is the owner and holds possession of the farm described in the first paragraph of the complaint (admitted in the answer). A brook which is fed by four tributaries flows through this property. Since in this farm there is no aqueduct, plaintiff's cows have to drink water from the brook. To that end, a watering place has been built which receives water from said brook.

"Several months prior to the filing of the complaint, the Puerto Rico Coconut Industries, Inc., established a factory for the processing of coconut and citron near and on land adjacent to the farm of the plaintiff. In this factory the defendant has a tube which carries the refuse from the processed fruits. Said tube has its outlet in plaintiff's land, but at a very short distance from the boundary line. The refuse, in liquid or solid form (water, coconut milk, fibers), falls into one of the streams which form the brook. Two

of the four above-mentioned tributaries favorably withstood the chemical analysis. The other two which were not examined are formed by springs and we have no reason to think that their waters are noxious.

"On the other hand, the analysis of the refuse from the factory shows that it pollutes the water, giving it a rank or foul smell. The analysis also indicated that the water gains grease, that its acidity increases, and that the diluted oxygen disappears..

"This condition of the water is consistent with plaintiff's statement that the cattle which use the water from the watering place, thus polluted, become sick, have diarrhea, and lose weight and agility. When the cattle, which become sick from drinking that water are transferred to another place, or stop drinking it, they are cured.

"The foregoing leads us to the conclusion that the refuse from defendant's factory, upon being discharged into the brook which flows through plaintiff's farm, pollutes the water so as to render it unfit, causing sickness among plaintiff's cattle, and the death of ten head of cattle."

We have carefully examined the transcript of the evidence and we think that the findings of fact and conclusions of law of the lower court are supported by the evidence.

The facts which have been alleged and proved are, in our judgment, sufficient to justify the issuance of the injunction *pendente lite*.

According to § 5 of the Law of Waters, Compiled Statutes of 1911, p. 459, "Waters which rise continuously or intermittently on property belonging to private individuals or to the State . . . belong to the respective owner, and may be used and enjoyed by such owner while flowing through such property." That same Section provides that if after leaving the property where they have their source the waters naturally flow through other private property, the owner of such property may use them temporarily, and then the owner of the property immediately below, if there be any, and thus successively.

Section 9 of Act No. 444 of May 14, 1947 (Laws of 1947, pp. 930, 939) provides:

"It shall be unlawful for any person to dump, or permit to be dumped, into any of the lakes, rivers, currents, surrounding waters, or any other waters of the Island, any refuse or contamination of any kind which tends to destroy fish, or may be harmful to public health. Any person who dumps, or permits to be dumped, any refuse or contamination into any of the waters of the Island, which may tend to destroy fish or be harmful to the public health, shall be considered as a violator of the provisions of this Act."

Section 12 of that same Act expressly provides that "... nothing contained in this Act shall be construed in the sense of repealing or in any manner limiting the provisions contained in and the rights conferred by the Civil Code in force in Puerto Rico, the Law of Waters, or the legislation approved in connection with the use and utilization of waters." Section 2 of the above-cited Act provides that "... anything which may be harmful to the conservation and utilization of said interior or surrounding bodies of water in Puerto Rico, ... shall constitute a public nuisance."

In accordance with the foregoing legal provisions, the plaintiff, as owner of a tract of land on which waters rise or naturally flow that are suitable for human consumption and for watering the cattle, is entitled to use said waters in their natural state, free from refuse and substances which might pollute them and render them unfit for the indicated uses and noxious to the health of persons and animals. The lower tenement owned by the plaintiff is subject to receive the waters flowing thereon from the higher tenement naturally and without the work of man. When the waters, as in this case, overflow from an industrial establishment, which has not acquired a servitude to throw them over the lower tenement, the owner of the latter is entitled to damages, and in addition has the right to "object to receiving the overflow from industrial establishments which contains or carries with it in solution noxious substances which have been introduced therein by the owners of such establishments." Section 69, Law of Waters.

█ An injunction, as defined by § 675 of the Code of Civil Procedure, 1933 edition, is a judicial command directing a person to refrain from doing or permitting to be done by others under his control a particular act which violates a right of another. Among the cases in which injunction may be granted pursuant to § 667 of the same code, are the following: (*a*) when it appears from the complaint that the plaintiff is entitled to the relief sought and such relief consists in restraining the commission or continuance of the act complained of; (*b*) when it appears from the complaint that the continuance of some act during the litigation would produce great or irreparable injury; (*c*) where pecuniary compensation would not afford adequate relief; and (*d*) to prevent a multiplicity of judicial proceedings.

The facts alleged in the complaint are sufficient to entitle the plaintiff to the remedy of injunction. See § 277 of the Code of Civil Procedure, 1933 edition. This was satisfactorily established by the lower court, without the defendant having offered any evidence to the contrary.[1] The pollution of the waters that a farmer needs, in their natural state, for consumption by human beings and by his cattle, is undoubtedly bound to cause him great and irreparable injury. The refusal to issue an injunction in a case like the one at bar would compel the plaintiff to bring an action for damages each time that one of his animals died in consequence of having drunk water polluted by the defendant, thus giving rise to a multiplicity of suits which the Injunction Act seeks to prevent.

█ The defendant has not even alleged that the balance of convenience is in its favor, or that it is materially or economically impossible for it to cast the waters polluted by it in a place other than the one it has been using without being entitled thereto and in violation of plaintiff's right.

---

[1] *Las Monjas Racing Corp.* v. *Insular Racing Comm.*, 57 P.R.R. 94; High on Injunctions, 3d., § 5, p. 6.

Moreover, the generally accepted doctrine is that the pollution of flowing water, with prejudice to the lower proprietor, cannot be justified by the mere importance of the business of the upper proprietor. *Straight* v. *Hover,* 79 Ohio St. 263, 22 L.R.A. (N.S.) 276, and note thereto. There are numerous decisions which hold that necessity does not constitute a defense to justify the unreasonable pollution of the waters. *Attorney General ex rel. Emmons* v. *Grand Rapids,* 141 N.W. 890, 50 L.R.A. (N.S.) 473, and cases cited therein.

The lower court did not err in granting the preliminary injunction. The order appealed from should be affirmed.